IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**FREDERICK LEWIS WASHINGTON**                                           **PLAINTIFF**

**V.**                  **NO. 4:22-CV-54-DMB-DAS**

**SUNFLOWER COUNTY, MISSISSIPPI**                                        **DEFENDANT**

**OPINION AND ORDER**

Sunflower County, Mississippi, moves for judgment on the pleadings on Frederick Lewis Washington's § 1983 First Amendment claim and his state law wrongful termination claim. Because Washington did not allege he spoke as a citizen and because he failed to plead the necessary elements to establish municipal liability, the motion will be granted with respect to the First Amendment claim. And because the Court declines to exercise supplemental jurisdiction over the state law claim, that claim will be dismissed without prejudice.

**I**
**Procedural History**

On April 7, 2022, Frederick Lewis Washington filed a complaint in the United States District Court for the Northern District of Mississippi against his former employer, Sunflower County, Mississippi. Doc. #1. In his complaint, Washington alleges he was terminated for reporting illegal activity by the County's Board of Supervisors in violation of his constitutional First Amendment right to free speech and "in violation of the Mississippi common law exception to employment at will, which prohibits an employer from discharging an employee because the employee reported illegal activity." *Id.* at 4–5.

The County filed an answer on June 6, 2022. Doc. #7. The same day, it filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Doc. #8. The

motion is fully briefed. Docs. #9, #18, #22.

## II
## Standard

The standard for deciding a Rule 12(c) motion for judgment on the pleadings is the same standard used for deciding a motion to dismiss pursuant to Rule 12(b)(6). *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252, 256 (5th Cir. 2022). To survive dismissal under this standard, "a complaint must present enough facts to state a plausible claim to relief. A plaintiff need not provide exhaustive detail to avoid dismissal, but the pleaded facts must allow a reasonable inference that the plaintiff should prevail." *Mandawala v. Ne. Baptist Hosp., Counts 1, 2, & 11*, 16 F.4th 1144, 1150 (5th Cir. 2021) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020). However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.*

> The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. The Court may also consider matters of public record, and any other matters of which it may take judicial notice.

*Tilman v. Clarke Cnty.*, 514 F. Supp. 3d 884, 889 (S.D. Miss. 2021) (cleaned up) (collecting cases).

## III
## Factual Allegations

Sunflower County employed Frederick Washington as its County Administrator. Doc. #1 at 2. His duties, which are outlined in Mississippi Code §§ 19-4-1 and 19-4-7, "concern administrative duties of carrying out the policies and directions of the Board of Supervisors in performing such tasks as making estimates of expenditures for the annual budget, hiring,

2

directing and controlling the work of County employees, and managing administrative and accounting functions." *Id.*

"On or about September 17, 2021, [Washington] informed the Chancery Clerk (the Clerk of the Board of Supervisors) that the Board had made an illegal purchase of a garbage truck." *Id.* Washington "learned and reported to the Board that before bids were taken for a County garbage truck, qualified bidders, who had complied with all the specifications required by State law, had been informed that they were not eligible in [sic] participate in the bidding process" because they "did not have a truck already on the ground." *Id.* at 2–3. "Having a truck already on the ground was not a requirement of the bids, and State law prohibited taking bids which were not contained in a written description or an appropriate amendment to the written description." *Id.* at 3.

"As a result of the … bid rigging, qualified bidders were eliminated, which left as the only bidders Burroughs Truck Company and Sansom Equipment Company." *Id.* Because Sansom "was a phantom bidder since it does not manufacture or sell trucks," Burroughs "obtained the right to sell the garbage truck to the County." *Id.* Burroughs "could not have gotten the bid unless there was an agreement among several persons to carry out the scam. This agreement was made either by various members of the Board of Supervisors and a representative of Burroughs … or was made [by] three (3) members of the Board of Supervisors." *Id.* at 4.

After Washington informed the Clerk about the "scam being carried out by the Board, at the next Board meeting, on September 20, 2021, [the County] … went into executive session … and discharged [Washington] from his employment." *Id.*

### IV
### Analysis

Washington alleges that his discharge "was in violation of the free speech rights guaranteed him by United States Constitution Amendment One, since reporting illegal and

3

criminal activity was not a part of [his] ordinary job duties, and … was a proximate cause of his discharge." *Id.* He also alleges he "was discharged in violation of Mississippi common law exception to employment at will, which prohibits an employer from discharging an employee because the employee reported illegal activity." *Id.* at 5.

In seeking judgment on the pleadings in its favor, the County submits that Washington's claims, as pled, fail for multiple reasons. Doc. #9 at 1. It argues that "the Board never did anything illegal" because "the Mississippi Governor and the Sunflower County Board of Supervisors both declared a state of emergency" due to COVID, under which "Mississippi statutory law conferred on [the County] additional emergency powers including the power to purchase needed commodities without following the normal procedure laid out in Mississippi's bid statutes." *Id.* As to the First Amendment claim, the County argues Washington "cannot show that he spoke as a citizen on a matter of public concern" and "has not pled the necessary facts to establish municipal liability." *Id.* at 10. According to the County, Washington's "state law claim is barred because he failed to appeal his termination" as required by Mississippi Code § 11-51-75 and, even if it is not barred, the claim "fails because it cannot meet either of the two limited public policy exceptions to Mississippi's at-will employment." *Id.* at 16.

### A. First Amendment Claim

> To establish a First Amendment retaliatory-discharge claim, [a plaintiff] must prove that (1) he suffered an adverse employment decision, (2) he spoke as a citizen on a matter of public concern, (3) his interest in the speech outweighs the government's interest in the efficient provision of public services, and (4) the protected speech motivated the adverse employment action.

*Bevill v. Fletcher*, 26 F.4th 270, 275–76 (5th Cir. 2022). The County challenges the second and fourth elements, arguing Washington "cannot show that he was speaking as a citizen on a matter of public concern, and he cannot show that his speech was a substantial or motivating factor of

his termination." Doc. #9 at 10.

As to the second element, the County contends Washington spoke as an employee rather than a citizen because "[a]ctivities undertaken in the course of performing one's job are activities pursuant to official duties, even if the employee is not required to undertake the activity," and Washington's duties required him to inform the Board if he thought it had "issued an illegal order … which he believed violated state and federal law." *Id.* at 11–12. Additionally, the County argues that Washington's reporting "internally, to the Clerk of the Board of Supervisors" further demonstrates he did not speak as a citizen because his speech which "took place almost entirely inside the workplace strongly favors the conclusion that his speech occurred in the course of his ordinary job duties." *Id.* at 13 (quoting *Marchman v. Crawford*, 237 F. Supp. 3d 408, 426 (W.D. La. 2017)).

Washington responds that "speech alleging illegal acts, which are outlawed by state and federal criminal law, is a matter of public concern" and "telling the Chancery Clerk that the Board is acting illegally, is not ordinarily within the scope of a County Administrator's duties." Doc. #18 at 9, 12 (cleaned up). He argues that "[i]f a county administrator can be retaliated against because he reports illegal activity to a public official, the likelihood of preventing public corruption is diminished." *Id.* at 12.

The County replies that while Washington "spends a large section of his response arguing to this Court about what constitutes issues of public concern[, t]hat is not what [it] has argued here." Doc. #22 at 5. Rather, it argues that he "was acting as an employee-not as a citizen."[1] *Id.*

> The as a citizen requirement draws a distinction between when public employees speak in their private capacities and when they speak pursuant to their official duties. When public employees speak pursuant to their official duties, they are not

---
[1] The County further argues that "what Washington alleges he reported was not illegal, thus, it was not a matter of public concern." Doc. #22 at 5. Given the basis for the ruling below, the Court need not reach the issue of public concern.

5

> speaking as citizens for First Amendment purposes, and their speech is not protected. Although the Supreme Court articulated no comprehensive framework for determining whether speech is within the scope of an employee's official duties, it did state that neither job descriptions nor the fact that the speech concerns the subject matter of the employment are dispositive. The Court further advised that the proper inquiry should be practical and focused on the scope of the employee's professional duties.

*Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 307–08 (5th Cir. 2020) (cleaned up).

*Powers* is instructive. In *Powers*, the plaintiffs were a principal and assistant principal whose job duties "included implementing Section 504 for students" at their school. *Id.* at 308. After the defendant school district realized the plaintiffs incorrectly determined a student qualified for an accommodation, it conducted an investigation and alerted the plaintiffs of Section 504 violations at the school. *Id.* at 303. The plaintiffs each contacted the Texas Education Agency ("TEA") on several occasions "to validate their Section 504 procedures and to report [the school district's] allegedly unlawful conduct." *Id.* at 303. The plaintiffs were suspended pending the outcome of the investigation, which ultimately concluded that the plaintiffs "intentionally authorized inappropriate student testing accommodations based on a misapplication of Section 504 eligibility requirements." *Id.* at 303–04. Subsequently, the school district terminated both plaintiffs' employment. *Id.* at 304. The plaintiffs sued the school district alleging, of relevance here, a violation of their First Amendment free speech rights under § 1983. *Id.* The district court granted summary judgment based on its conclusion that "Plaintiffs' complaints to the TEA regarding [the school district's] application of Section 504 accommodations were activities performed pursuant to [their] official duties." *Id.* at 307.

On appeal, the *Powers* plaintiffs "contend[ed] that their job duties did not include *reporting* [the school district's] alleged misconduct to a higher level authority." *Id.* at 308. The Fifth Circuit found this argument "unconvincing." *Id.* It concluded that because the plaintiffs

were "tasked with implementing and ensuring compliance with Section 504," "[i]t then follows that [their] calls to TEA regarding Section 504 construction and application at [the school] were clearly … undertaken in the course of performing their jobs, such that they were pursuant to [their] official duties" and thus their speech was "not protected by the First Amendment." *Id.*

Here, Washington alleges that his duties as County Administrator "are described in MISS. CODE ANN. § 19-4-1 and MISS. CODE ANN. § 19-4-7." Doc. #1 at 2. Mississippi Code § 19-4-7 provides:

> The board of supervisors may delegate and assign to the county administrator the duties and responsibilities enumerated below, in whole or in part, and such other duties and responsibilities as said board may determine, not contrary to the laws of the State of Mississippi or the Constitution thereof and not assigned by law to other officers:
> …
> (m) See that all orders, resolutions and regulations of the board of supervisors are faithfully executed;
> …
> (o) Keep the board of supervisors informed as to federal and state laws and regulations which affect the board of supervisors and the county …
> …
> (q) Receive inquiries and complaints from citizens of the county as to the operation of county government, investigate such inquiries and complaints and shall report his finding to the board and the individual supervisor of the district from which such inquiry or complaint arises.

Miss. Code Ann. § 19-4-7(m), (o), (q).

Similar to how the *Powers* plaintiffs were tasked with implementing Section 504, Washington was tasked with ensuring that all Board orders were faithfully executed, informing the Board in relation to state and federal law, and reporting his findings on complaints to the Board. As in *Powers*, it follows that his reporting what he believed to be illegal conduct to "the Clerk of the Board" was done pursuant to his official duties. Thus, he was not speaking as a

private citizen and his speech is not protected. *Powers*, 951 F.3d at 308. And because his speech is not protected, he fails to state a First Amendment claim.[2]

### B. Municipal Liability

The County also argues that "Washington's First Amendment claim must be pled through municipal liability" and he "has not alleged that there was an official policy that was promulgated by the Board of Supervisors and that this policy was the moving force behind the violation of his constitutional right." Doc. #9 at 15–16. Washington responds that municipal liability is adequately pled because all that is required "is a short and plain statement that [the County] violated his First Amendment rights." Doc. #18 at 14 (internal quotation marks omitted). The County replies that "Washington has not identified an official policy which was the moving force behind his alleged violation of his constitutional right." Doc. #22 at 10.

"To state a § 1983 claim against a municipality, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Jackson v. City of Hearne*, 959 F.3d 194, 204 (5th Cir. 2020) (internal quotation marks omitted). Here, Washington's failure to allege a First Amendment claim, as detailed above, "forecloses his claim" against the County. *Id.* Regardless, he "fails to identify any municipal policy or custom, much less one that violated a constitutional right." *Id.* Accordingly, Washington has failed to state a municipal liability claim.

### C. State Law Claim

The County argues the "state law claim is barred because [Washington] failed to appeal his termination" as required by Mississippi Code § 11-51-75 and, even if it is not barred, the claim "fails because it cannot meet either of the two limited public policy exceptions to

---

[2] Given this conclusion, the Court declines to address whether the speech was a motivating factor in the termination decision.

8

Mississippi's at-will employment" because the reported activity was not illegal.  Doc. #9 at 16.

Because the County's motion for judgment on the pleadings has been granted on Washington's federal claim, no federal question remains.  Since the parties' lack of diversity[3] precludes diversity jurisdiction, the Court must use its discretion to decide whether to exercise supplemental jurisdiction over the state law claim.  *See Heggemeir v. Caldwell Cnty.*, 826 F.3d 861, 872 (5th Cir. 2016).  The supplemental jurisdiction statute, 28 U.S.C. § 1367, provides:

> The district courts may decline to exercise supplemental jurisdiction … [if] (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Courts in the Fifth Circuit treat the four circumstances enumerated in § 1367 as "statutory factors" to consider when evaluating supplemental jurisdiction.  *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 159 (5th Cir. 2011).  "The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial."  *Watson v. City of Allen*, 821 F.3d 634, 642 (5th Cir. 2016).

Whether the Board's actions violated Mississippi law such that Washington's reporting them would fall under an exception to the at-will employment doctrine is better addressed by the state courts.  This Court therefore declines to exercise supplemental jurisdiction over the state law claim.

## V
## Conclusion

The County's motion for judgment on the pleadings [8] is **GRANTED in Part and DENIED in Part without prejudice**.  It is GRANTED as to Washington's First Amendment §

---

[3] *See* Doc. #1 at 1; *see also id.* at 2 (asserting federal question jurisdiction).

9

1983 claim.  It is DENIED without prejudice in all other respects.  Washington's state law claim is **DISMISSED without prejudice**.

    **SO ORDERED**, this 24th day of January, 2023.

**/s/Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**
